**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                    )
MATTHEW L. CHATHAM and                              )
ERIN CHATHAM,                                       )
                                                    )
         Plaintiffs,                                )
                                                    )
         v.                                         )    Civil Action No. 1:17-cv-11473-IT
                                                    )
DANIEL J. LEWIS and                                 )
CANTERBURY VENTURES, LLC,                            )
                                                    )
         Defendants.                                )
_____)

## PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO "REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT"

Plaintiffs Matthew and Erin Chatham (the "Chathams") hereby respond to Defendants'

Objection to "Report and Recommendations on Defendants' Motion for Partial Summary

Judgment" (dkt. 182) ("Objection").

Defendants' Objection should be overruled because it refuses to acknowledge the ample

evidence of record, including but not limited to the evidence specifically called out by Judge

Cabell in his Report and Recommendation (dkt.177), that the parties had orally extended the

Purchase and Sales Agreement ("Agreement") that stands at the heart of this matter.  Each and

every aspect of Defendants' Objection requires a finding that the Agreement had terminated on

March 13, 2017; yet Defendants do not even address, much less provide sounds reasons, why

Defendants' conduct in continuing to construct the house in close consultation with the

Chathams, combined with the multiple representations from their attorney, Neal Bingham, and

their real estate agent, Patricia Bergevine, that the agreement remained in effect through late May

2017 (when Defendants repudiated the Agreement) do not create an issue of material fact that precludes summary judgment. Further, Defendants' argument with respect to specific performance should be overruled for the separate and additional reason that it was never raised in their summary judgment briefing and has thus been waived.

In addition to the below, Plaintiffs expressly rely on their Opposition to Defendants' Motion for Partial Summary Judgment (dkt. 111) and on the Report and Recommendation on Defendants' Motion for Partial Summary Judgment (dkt. 177) ("Recommendation").

**I.     There is Ample Evidence that the Parties Agreed to an Oral Extension of the P&S Agreement Which Precludes Summary Judgment on the Breach of Contract Claim**

Defendants manage to spend five full pages on their breach of contract issue without ever substantively addressing the material issues of fact identified by Magistrate Judge Cabell. Judge Cabell determined that there was, at a minimum, a disputed issue of material fact with respect to whether the parties agreed to an oral extension of the P&S Agreement beyond the March 13, 2017 extended closing date. Recommendation at 21. Specifically, Judge Cabell identified the following as undisputed evidence of an oral extension:

a) Defendants continued working on construction of the house with input from the Chathams until late May 2017;

b) Defendants' counsel, Neal Bingham, affirmed that the contract remained in effect at least through May 17, 2017, stating that "Canterbury continues to perform construction on the Property in good faith and in accordance with the P&S" in an e-mail sent to Plaintiffs on that date (M. Chatham Aff. At Ex. F, affirmed by Defendants at Objection at 10);

c) Defendants' counsel unilaterally purported to terminate the P&S Agreement on May 25, 2017 (M. Chatham Aff. At Ex. G).

Recommendation at 22. Defendants somehow manage to completely ignore each of these pieces of evidence as they baldly assert (*twice*) that there is "no scintilla" of evidence that Canterbury agreed to an oral extension of the closing date. Objection at 7, 11.

Making this argument even more difficult to believe, Defendants' Objection itself cites

even more evidence that Defendants had agreed to extend the closing date beyond the March 13,

2017 final date set forth in the P&S Agreement:

> d) Defendants' real estate agent, Patricia Bergevine, corresponded with Plaintiffs on April 20, 2017, seeking to determine whether a stone facing could be selected and indicating that if it could not, Defendants "respectfully conclude that we need to release Matt from this contract."  M. Chatham Aff. At Ex. B;

> e) Agent Bergevine again communicated with Plaintiffs on May 10, 2017, regarding a question with the window selections, and again indicated that if the issue could not be resolved, "we respectfully ask to be released from this contract." M. Chatham Aff. At Ex. C;

> f) Attorney Bingham again reiterated that the P&S remained in effect by letter of May 17, 2017, stating "if the Chathams are unwilling to comply with this very reasonable demand by May 19, then Canterbury hereby terminates the [Agreement]…"  Chatham Aff. At Ex. F.

Objection at 10.  Each and every one of these communications, made by Defendants' real estate

agent or attorney, confirms that the Agreement did not terminate on March 13, 2017 and instead

was extended by agreement of the parties – as Judge Cabell noted (with respect to the first three

alone, these "communications coupled with the defendant's continued work on the house provide

***strong if not dispositive*** evidence that the parties did orally agree to extend their contract…"

Recommendation at 22 (emphasis added).

These communications make clear that there is, at a minimum, a disputed issue of fact as

to whether the contract was extended, precluding summary judgment in favor of the Defendants.

## II.     Defendants Have Not Proven as a Matter of Law that Plaintiffs are Not Entitled to Specific Performance

Specific performance is "usually granted in disputes involving the conveyance of

land.  *McCarthy v. Tobin*, 429 Mass. 84, 85–90, 706 N.E.2d 629, 630–33 (1999) (citing *Raynor*

*v. Russell,* 353 Mass. 366, 367, 231 N.E.2d 563 (1967). "It is well-settled law in this

Commonwealth that real property is unique and that money damages will often be inadequate to

redress a deprivation of an interest in land." *Id.* (*citing Greenfield Country Estates Tenants Ass'n, Inc. v. Deep,* 423 Mass. 81, 88, 666 N.E.2d 988 (1996).  Here, specific performance remains a remedy available to the Plaintiffs.

### A.  Defendants Waived the Argument they Raise in their Objection Regarding Specific Performance

Defendants' argument with respect to specific performance in their Motion for Summary Judgment was solely and exclusively that (a) "the specific performance remedy sought by Plaintiffs would require that Canterbury perform 'personal services' to finish construction in accordance with the Plans," and that Massachusetts law does not permit such remedies; and (b) that Canterbury "at all times acted equitable [sic] because it was willing to complete construction of the House for Plaintiffs if they would simply agree to further extension."  Memorandum in Support of Partial Motion for Summary Judgment (dkt. 90) at 15-16.  At no point did Defendants suggest that a purported unjustified failure to tender the purchase price would result in an inability to obtain specific performance.  Accordingly, Defendants have waived that argument, and cannot raise it by their objection to the Magistrate Judge's Recommendation.  *See, e.g.*, *Carver v. Bank of New York Mellon*, No. CV 13-10005-MLW, 2016 WL 7838902, at *3 (D. Mass. Sept. 8, 2016) (*quoting Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987)) (noting that "[a party is] not entitled to a de novo review of an argument never raised" before the magistrate judge" and finding that arguments not raised before the Magistrate Judge were waived); *Costa v. Hall*, No. 00-12213-MLW, 2010 WL 5018159, at *17 (D. Mass. Dec. 2, 2010) ("Absent objections, the court may adopt the report and recommendation of the magistrate judge.").  That Defendants have new counsel who may have different ideas about the case is immaterial – arguments and theories not raised in the summary judgment papers cannot be raised by new counsel in objecting to the recommendation of the Magistrate Judge.

*Maine Green Party v. Maine, Sec'y of State*, 173 F.3d 1, 1–9 (1st Cir. 1999) (rejecting new

argument that was set forth by new counsel in the objection to the Magistrate Judge's

recommendation that had not been urged in the summary judgment papers); *see also, e.g.*,

*Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998) ("The district court is under no

obligation to discover or articulate new legal theories for a party challenging a report

and recommendation issued by a magistrate judge."); *Paterson–Leitch Co., Inc. v. Massachusetts*

*Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir.1988) (similar); *Borden v. Secretary of*

*Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987) ("Appellant was entitled to a *de*

*novo* review by the district court of the [magistrate judge's] recommendations to which

he objected, however he was not entitled to a *de novo* review of an argument never raised.")

(citation omitted).  For this reason alone, Defendants' objection on the issue of whether specific

performance is available should be denied.

### B.  Plaintiffs have Ample Evidence that the Parties Agreed to an Extension of the Closing Date, Which Obviates the "Time is of the Essence Clause"

Even assuming Defendants' specific performance argument was not waived, Defendants

cannot demonstrate entitlement to a finding in its favor on summary judgment.  Defendants'

argument in their Objection requires a finding that the Agreement, as a matter of law, was not

extended by oral agreement, because an extension of the Agreement would obviate Chatham's

obligation to tender payment on or before the March 13 extended closing date.  As Defendants

acknowledge, it is possible to waive a "time is of the essence" clause orally or implicitly.

*Perroncello v. Donahue*, 64 Mass. App. Ct. 564, 568, 835 N.E.2d 256, 259–60 (2005), *rev'd in*

*part*, 448 Mass. 199, 859 N.E.2d 827 (2007); *see also, e.g.*, *McCarthy,* 429 Mass. at 89,

("continu[ing] to deal with [the other party's] lawyer in an effort to craft a mutually satisfactory

agreement" is a sign of implied waiver); *Church of God in Christ, Inc. v. Congregation Kehillath*

*Jacob*, 370 Mass. 828 , 832, 834 (1976) (finding a waiver of the closing date requirement by the continued acceptance of payments and continued dealings between the parties after the deadline).

Indeed, as the extended closing date approached, Defendants had ample reason to agree to extend the date.  The Agreement includes a Rider that is not found in the standard form P&S agreement.  The Rider, and particularly Paragraph 18 of the Rider, was included to account for the unique circumstance of the Agreement – that the builder would be constructing a custom designed, copyrighted house design to which the builder had no ownership.  Mr. Chatham specifically sought to prevent his custom house design be built and sold to another.  *See* Affidavit of M. Chatham, dkt. 113, at ¶ 5. This paragraph, with the requirements for escrowing cost to completion to ensure that the house was completed plus the requirement that "[]n no event shall the seller have any right to close without full completion of the work without prior approval of Buyer's Lender and Buyer."[1]  If Defendants had not agreed to an extension. They were faced with the prospect of having to escrow 150% of the substantial cost to complete the house (which would have been at least $398,000, *see* Aff. Of M. Chatham, dkt. 113, at Ex. H) pursuant to this paragraph, as well as face a fraud/Ch. 93A lawsuit on a house that copyright prevented from being sold to anyone else.  Affidavit of M. Chatham, dkt. 113, at ¶ 17.

Further, as the extended closing date approached, Defendants' real estate attorney who had negotiated the P&S Agreement, Michael Heaney, acknowledged in writing that Defendants could not build and sell the house to anyone other than the Chathams.  *See* Jan. 11, 2017 e-mail from D. Lewis to M. Chatham, Ex. G to Lewis Aff. (dkt. 95-7) ("I have spoken with Attorney Mike Heaney and believe we need to decide if we are moving forward.  The plans for the house

---

[1] Defendants suggest that Plaintiffs cannot rely on this provision because the Chathams did not submit a punchlist of unfinished items until April 18, 2018.  Yet it is Defendants' breach of the Agreement in not letting the Chathams inspect the house that resulted in the delay.

are your property and as such I am not entitle to build that house once we are out of contract…").

Finally, at the March 17, 2017 meeting, Attorney Heaney again agreed that the Agreement

prohibited the sale of the house to anyone other than the Chathams.  *See* Affidavit of M.

Chatham (dkt. 113) at ¶¶ 17-18.  Paragraphs 9 and 10 were never raised by Heaney or Lewis at

that meeting (or at any other time prior to their post-repudiation attempt to keep the Chathams'

deposit in state court).  Defendants' litigation-driven and tortured construction of this provision

should be disregarded.

As noted above, there is strong evidence that the parties did orally extend the P&S

Agreement.[2]  This extension of the closing date eliminates the "time is of the essence"

requirement of the P&S Agreement.  *See, e.g.*, *McCarthy*, 429 Mass. at 85–90 ("Once there was

a waiver [of a deadline to close], time was no longer of the essence.").

### C.  Defendants Repudiation of the Agreement Obviated the Chathams' Obligation to Tender Performance

Again, even assuming that Defendants' specific performance objection was not waived,

Defendants' argument that the Chathams failed to tender performance and therefore are not

entitled to specific performance is simply incorrect in light of the facts on the record and case

law.

Although Defendants correctly cite the general rule that "[A] buyer must manifest that he

is ready, able, and willing to perform by setting a time and place for passing papers or making

---

[2] In addition to the above, Defendants have previously taken the legal position that a purchase and sales agreement having similar language can and does remain in effect beyond the closing date set forth in the Agreement.  When the P&S Agreement with the subsequent purchasers of the house in suit (Timothy and Casey Mitchell) was beyond the closing date, Mr. Lewis testified that they were under agreement despite not having a closing date.  Lewis Deposition (dkt. 180-1) at 130:1-1317.  Similarly, in a litigation between Defendants and Kenneth and Selena Graham in Massachusetts Superior Court, Defendants argued that the expiration of an extended closing date without the buyer agreeing to a return of the deposit or agreeing to buy the house as it then stood meant that the contract remained in force, with a closing date that is "reasonable under the circumstances."  See Plaintiffs' Emergency Motion for Preliminary Injunction (dkt 142) at p. 8, n. 1 and Exhibit A to the McNulty Declaration in Support thereof (dkt. 143-1).

some other concrete offer of performance," *see Lafayette Place Assocs. V. Boston Redevelopment Auth'y*, 427 Mass. 509, 520 (1978), *cert. denied*, 525 U.S. 1117 (1999), Defendants fail to acknowledge the exception to this rule – when there has been a repudiation of the agreement. *See Coviello v. Richardson*, 76 Mass. App. Ct. 603, 609 (2010). Repudiation must be a definite and unequivocal manifestation of the intention not to render performance. *Id.* (citing *Hammond v. T.J. Litle & Co.*, 82 F.3d 1166, 1178 (1st Cir.1996), quoting from *Thermo Electron Corp. v. Schiavone Constr. Co.*, 958 F.2d 1158, 1164 (1st Cir.1992)). As noted above, there is strong evidence that the parties did orally extend the P&S Agreement to a date later than May 25, 2017.[3] Defendants unequivocally repudiated its agreement with the Chathams before reaching a closing date when Defendants' attorney sent the May 25, 2017 letter to the Chathams, stating that the agreement was terminated and further by Canterbury Ventures filing a civil action in Norfolk Superior Court on or about May 30, 2017 (Civil Action No. 1782CV00654) to attempt to retain the Chathams' deposit (this action was subsequently dismissed voluntarily by Canterbury Ventures). Additionally, to further evidence that Defendants had no intention of performing under its agreement with the Chathams, Defendants re-listed the Lot 5 property for sale.

Typically, a seller's repudiation of his contractual obligation makes unnecessary any tender of performance or offer of performance by the buyer, and where it is established that the buyer was ready, willing, and able to perform, specific performance is the appropriate remedy. *Coviello*, 76 Mass. App. Ct. at 610; *Limpus v. Armstrong*, supra at 22, 322 N.E.2d 187; *see also*

---

[3] As of the March 17, 2017 meeting between the Chathams, Lewis, and Attorney Michael Heaney (the real estate attorney who represented Lewis and Canterbury in negotiating the Agreement with the Chathams), the parties had already agreed to extend the Agreement to a date at which the house could reasonably be completed; Lewis was to provide a reasonable schedule, after which  date certain would be selected. Affidavit of M. Chatham, dkt. 113, at ¶ 18 and Ex. B (an April 20, 2017 e-mail string in which Agent Bergevine writing to the Chathams' real estate agent that "[w]e will agree to a specific delivery date that is agreeable to all parties going forward.").

*Charles River Park, Inc. v. Boston Redev. Authy.*, 28 Mass.App.Ct. 795, 803–804, 557 N.E.2d 20 (1990). However, there is an exception to this rule when the seller materially breaches the agreement by making clear "that he cannot or will not perform" his contractual duty to convey the premises. *Maltais Enterprises, LLC v. Salt Marsh, LLC*, Mass. Land Ct., No. 10 MISC. 427661 KCL (Apr. 22, 2011). Under this factual scenario, the buyer is under no obligation to demonstrate that "he is ready, able, and willing to perform ... by some offer of performance," because "the law does not require a party to tender performance if the other party has shown that he cannot or will not perform." *Id.* (citing *Leigh v. Rule*, 331 Mass. 664, 668 (1954); *see also Coviello*, 76 Mass.App.Ct. at 609, stating that "[a] material breach of contract by one party excuses the other party from performance ... A repudiation of an agreement is a material breach." Here, Defendants' representation through counsel that the agreement was terminated and their further actions of filing a civil action against the Chathams and re-listing the property for sale show that Defendants were not willing to perform in accordance with their agreement to sell the Chatham-designed and copyrighted home to the Chathams. Because Defendants were not willing to perform, Defendants materially breached the agreement, relieving the Chathams of the obligation to show that they were ready, able, and willing to perform. Therefore, despite Defendants contentions, the Chathams have a viable claim for specific performance.

### D.  The Agreement Set Forth a Number of Conditions Precedent to the Closing that Defendants Failed to Achieve

Defendants seem to believe that, under the P&S Agreement, they had no obligations to complete construction by the closing date, and that regardless of the state of the house as of the closing date, Plaintiffs were require to pay in full or "request" the return of the deposit.  Nothing could be further from the truth.

First, Paragraph 9 of the Agreement (the sole provision on which Defendants rely), titled

"FAILURE TO PERFECT TITLE OR MAKE PREMESES CONFORM, etc.", expressly refers

to SELLER's, not BUYER's, option to withdraw from the Agreement:

> If, at the expiration of the extended time the SELLERS shall have failed to so remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed… then any payments made under this agreement shall be **_forthwith refunded_** and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. (emphasis added)

This section, by its own terms, states that SELLER (*i.e.*, Defendants) must "forthwith" refund all

payments made under the agreement at the expiration of the extended closing date to end the

obligations of the parties to the Agreement.  It is uncontested that Defendants never returned the

Chatham's deposit.  By failing to return the deposit, Defendants have waived the provisions of

Paragraph 9, and cannot obtain summary judgment on the basis of this paragraph.

Putting aside Defendants' failure to refund the Chathams' deposit, and resultant failure to

trigger the provisions of Paragraph 9, the Agreement itself sets forth a number of conditions

precedent to a closing on the property:

- Full possession of said premises free of all tenants and occupants, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in new condition with **_all materials, fixtures and appliances being new and substantially complete_** (Agreement, ¶ 7, emphasis added);

- The SELLERS shall, at the time of delivery of the deed, deliver a **_certificate from the fire department_** of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors and carbon monoxide detectors in conformity with applicable law and shall deliver at or before the time of closing a **_permanent certificate of occupancy_** from the Town of Wrentham building department (Agreement, ¶ 26, emphasis added);

- It is understood and agreed by the parties that the premises shall **_not be in conformity_** with title provisions of the Agreement unless:…(iv) the premises are serviced by all **_usual and customary utilities_**, including electric, gas (if applicable), telephone, municipal water and sewer (unless there is a private septic system) and cable television which are brought to the premises directly from the street or under, across

10

or over land of another by means of a validly recorded easement of record (Agreement, ¶ 27, emphasis added);

- The premises are to be in broom clean condition, all personal property of the SELLER is to be removed and all appliances are to be in new condition and all *structures and site work substantially complete at the time of closing*, except as otherwise set forth herein, reasonable wear and tear excepted (Agreement, ¶ 37, emphasis added); and

- ADDITIONAL PROVISIONS… Subject to the Seller providing a ***Permanent Certificate of Occupancy*** (Agreement, ¶ 43).

There is no dispute that, as of the March 13, 2017 extended closing date, Defendants had put no fixtures or appliances in the house or provided customary utility service – as of Plaintiffs' January 2018 inspection of the Property, nine months later, the interior of the house was just framed, with no floors, walls or ceilings installed, no appliances installed, no fixtures installed, and no utilities in place.  Moreover, as of the March 13, 2017 extended closing date, Defendants had failed to obtain the required certificate from the fire department or the required permanent occupancy permit – Defendants did not obtain a permanent occupancy permit until the spring of 2019, two years later.  *C.f. Sun Oil Co. v. Greenblatt*, 2 Mass. App. Ct. 861, 861, 314 N.E.2d 462, 463–64 (1974) ("the agreement was a bilateral contract binding the plaintiff to its promise to pay the purchase price upon the occurrence of its stated conditions.").

In addition, there were a number of provisions of the Agreement that Defendants breached prior to the extended closing date, which breaches prevented Plaintiffs from exercising the option set forth in Paragraph 10, specifically:

- The BUYER shall be entitled personally to inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause (Agreement, ¶ 7); and

- The BUYERS shall have access to the premises at reasonable times and upon reasonable notice for appraisals, taking measurements, etc. prior to the final walk-through, and in the presence of a real estate broker involved in this transaction (Agreement, ¶ 28).

11

By preventing Plaintiffs from accessing and inspecting the property, Defendants frustrated Plaintiffs' ability to make an assessment of whether to exercise the option under Paragraph 10 to pay the full contract price and purchase the house as it then stood.  By preventing Plaintiffs from exercising their rights under the Agreement, Defendants violated the implied covenant of good faith and fair dealing to which Massachusetts subjects every contract. *See Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451 , 471-3 (1991). ("The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ").

### E.   Defendants Cannot Rely on the Provisions of Paragraph 9 Because Defendants Did Not in Good Faith Undertake to Complete the House in Accordance with the Agreement.

Defendants' reliance on *Traboini v. Kirk* is misplaced.  In that case, the Purchase & Sales Agreement required Defendants deliver possession of the subject property, which consisted of two rental units, free of tenants.  *Traboini v. Kirk*, No. 17 MISC 000713 (KFS), 2018 WL 2452818 (Mass. Land Ct. May 31, 2018), *judgment entered*.  The relevant paragraph of the P&S required the seller use "reasonable efforts" to deliver the premises free of tenants, but expressly provided that "reasonable efforts shall not require the Seller to expend more than $2,000.00" in seeking to comply.  *Id*. at *2.  The seller, in seeking to comply with the agreement, notified the tenants months in advance that they would be required to move; employed an attorney to formally serve notices to quit more than 10 weeks prior to the closing date; and negotiated with counsel for the tenants; but despite these efforts, one of the tenants refused to move until the end of his lease.  *Id*.  In finding specific performance unavailable to the buyer, the Land Court expressly stated:

Defendants, while unsuccessful in their efforts to remove their tenants in a timely manner, complied with what was called for under the Agreement. Plaintiffs' actions here do not support a claim for specific performance *unless they can establish that Defendants breached their contract by failing to perform their obligations*.

*Id*. at *4 (emphasis added).

In the case at hand, the Agreement required Defendants to "use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be…" and provided for a sixty-day extension of the Agreement to allow time for the premises be brought into compliance. Agreement at ¶ 8.  Importantly, while this paragraph states that Defendants would not be required under this provision to expend more than $2,500.00 to effect such a cure, the agreement expressly states that "the $2,500.00 limitation shall not apply to any costs necessary to complete construction of the house and site."  *Id*.

Plaintiffs have alleged a number of breaches by Defendants failing to perform their obligations under the Agreement, occurring prior to the original January 12, 2017 closing date and between the original closing date and the extended March 13, 2017 closing date, that bring this case out of the gambit of *Traboini*.   The Agreement, executed on July 27, 2016, called for construction to be complete in less than six months, with an additional two months available through the extension.  As detailed in the Second Amended Complaint (dkt. 51), Plaintiffs' Opposition to Defendant' Motion for Partial Summary Judgment (dkt. 111), Plaintiffs' Response to Defendants' Local Rule 56.1 Concise Statement of Material Facts in Support of Defendant' Motion for Partial Summary Judgment (dkt. 112), and Plaintiffs' Supplemental Brief Pursuant to the Court's Request in Further Opposition to Defendants' Motion for Partial Summary Judgment

(dkt. 122), Defendants:

- Failed to obtain the subject property for more than three months, more than half of the available time to complete construction;

- Failed to obtain the necessary building permits until December 13, 2016, in part because Defendants did not apply for a permit from each of the towns on which the property resides despite knowing from the outset that such would be required;

- Failed to pour the foundation for the house until January 20, 2017;

- Failed throughout the build period to adequately staff the construction, often allowing days and weeks to pass with no work whatsoever taking place;[4]

- Took on additional construction projects despite lacking sufficient manpower to complete the Chatham house, resulting in chronic complaints from the buyers involved about insufficient workforces and delays (Suppl. Brief, dkt. 122, at 7-8);[5]

- Sought to extract additional money, not called for by the Agreement, from the Chathams;

- Altered the angle of the roof to cut down on materials and expenses, and then jerry-rigging the roof rather than making a structurally appropriate repair;

- Refused to allow access to the Chathams, preventing them from exercising their rights under the Agreement; and

- Unilaterally "terminated" the Agreement without cause so that they could re-list the house at a substantially higher sales price.

These and additional failings of Defendants are further laid out in detail in Plaintiffs' November

21, 2017 letter to Defendants in accordance with M.G.L. c. 93A (dkt. 51-13).

---

[4] Despite Defendants subcontracting the entire construction of the house to third parties, Defendants have failed to produce a single contract or communication with any subcontractor (despite a Court order compelling them to do so, *see* dkt. 71) that would indicate any good faith effort to complete construction of the house in accordance with the timelines set forth in the Agreement. *See* Plaintiffs' Supplemental Brief (dkt. 122) at 6-7.

[5] A review of public records has shown that, in addition to taking 35 months to complete the Chatham home that was to have been constructed in six, Canterbury during the same time period contracted to build at least three additional homes, one of which (the Grahams) took 25 months to complete and is the subject of on-going litigation, another of which has taken 35 months thus far and remains unfinished, and the third of which is at 25 months and counting. Canterbury could not, in good faith, have agreed to these additional projects (as well as beginning construction on several spec houses during the same period of time) if it had any intentions of completing the Chatham house at the agreed-upon schedule.

III.    **Plaintiffs Have Raised Substantial Issues of Material Fact that Defendants Breached the Covenant of Good Faith and Fair Dealing that Preclude Summary Judgment on That Issue**

Plaintiffs' claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is *not* that, once the P&S Agreement had terminated, Defendants had an obligation to negotiate a new agreement in good faith – as set forth above, the P&S Agreement did not terminate, and remained operative up to the point that Defendants repudiated the Agreement.  Accordingly, Defendants' reliance on *Schwanbeck* is inapposite, as that case dealt solely with obligations relating to negotiation of a contract and not performance under an existing contract.  *See Schwanbeck v. Fed.-Mogul Corp.*, 31 Mass. App. Ct. 390, 395, 578 N.E.2d 789, 793 (1991), *rev'd*, 412 Mass. 703, 592 N.E.2d 1289 (1992) (finding that a letter of intent did not create an obligation to negotiate in good faith, despite language to that effect being in the letter, because the letter did not rise to the level of a contract).

Instead, Plaintiffs assert that, for the myriad reasons described above, Defendants executed the P&S Agreement with no intention of complying with the terms thereof, and then proceeded to ignore its obligations under the Agreement or to make a good faith effort to complete the house under the time frame to which they had agreed.  "A duty of good faith and fair dealing is implicit in the performance of a contract, even if not stated.  *See Schwanbeck*, 31 Mass. App. Ct. at 395 (*citing McEvoy Travel Bureau, Inc. v. Norton Co.,* 408 Mass. 704, 712–713, 563 N.E.2d 188 (1990), *Fortune v. National Cash Register Co.,* 373 Mass. 96, 102–103, 364 N.E.2d 1251 (1977), and Restatement (Second) of Contracts § 205 (1979)).  As Defendants concede, this means that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Objection at 17 (citing *Anthony's Pier Four*, 411 Mass. at 471-2).

Indeed, while Plaintiffs need not demonstrate bad faith to prevail under this theory, *see*

*Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964

(2004)  (*citing Nile v. Nile,* 432 Mass. 390, 398–399, 734 N.E.2d 1153 (2000)) (A plaintiff must

show a lack of good faith and is not required to show that the defendant acted in bad faith),

Plaintiffs assert that Defendants did act in bad faith by their refusing to utilize materials such as

the stone on the facing of the house unless Plaintiffs paid additional monies to Defendants and

ultimately deliberately hindering construction to ensure that the contract would lapse, allowing

Defendants to relist the house for substantially more money.[6]

      Plaintiffs' Agreement with Defendants was to have a house constructed in accordance

with the custom, copyrighted design created by Mr. Chatham, utilizing the materials set forth in

those plans and in Addendum B to the Agreement, and completed by the date specified int  he

Agreement.  That is the remedy that Plaintiffs seek – delivery of the house for the price

determined in the agreement, adjusted for the cost required to bring the house into compliance

with the plans, and to compensate Plaintiffs for the considerable cost in finding different

accommodations for the now 2 ½ years beyond the closing date.  The Agreement did not,

contrary to Defendants' litigation-driven position, allow Defendants to fail to ***even try*** to

complete the house and then simply walk away at the conclusion of the time set forth – to so

interpret would effectively relieve Defendants of any and all obligations under the Agreement

save the return of the deposit, which Defendants did not do in any event.

## IV.    Defendants Should be Barred from Raising the Alleged Failure of Matthew Chatham to "Reserve" His Copyright or the First Sale Doctrine in This Litigation

      Judge Cabell recommended denial of summary judgment on Plaintiffs' copyright claim.

As a part of this recommendation, Judge Cabell determined that, as a matter of law, Defendants'

---

[6] Defendants relisting sought an additional $100,000 over what they would have received from Plaintiffs, and Defendants expected to profit further by completing the house using inferior and less expensive materials.

argument that Mr. Chatham did not "reserve" his copyright "has no merit (Recommendation at 13-14) and that, as a matter of law, the First Sale Doctrine does not apply because it is undisputed that Defendants never actually purchased a copy of Mr. Chatham's copyrighted work (*id*. at 18-19). Defendants did not specifically object to these findings. Accordingly, Defendants are forever barred from raising these defenses in this litigation. *Turner v. Hubbard Sys., Inc.*, No. CV 12-11407-GAO, 2015 WL 12697735, at *1 (D. Mass. July 22, 2015) (*citing Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988), *United States v. Emiliano Valencia-Copete,* 792 F.2d 4 (1st Cir. 1986), *Scoff v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376,378-379 (1st Cir. 1982), *and Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980) (noting that the "United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.").

## CONCLUSION

For the reasons set forth herein, as well as in their Opposition to Defendants' Motion for Partial Summary Judgment and the Recommendation of Judge Cabell, Plaintiffs respectfully request that Defendants' Objection be OVERRULED in its entirety. Plaintiffs further respectfully request that this Court enter an order prohibiting Defendants from raising the First Sale Doctrine and/or an alleged failure of Matthew Chatham to "reserve" his copyright on the house design in defense of Plaintiffs' copyright claim in any further proceeding in this litigation.

Dated:  October 10, 2019                    Respectfully submitted,

                                            MATTHEW L. CHATHAM and
                                            ERIN CHATHAM,

                                            By their attorneys,

                                             /s/ Thomas P. McNulty
                                            Thomas P. McNulty (BBO# 654564)
                                            John N. Anastasi (BBO# 566725)
                                            Nathan T. Harris (BBO# 675533)
                                            LANDO & ANASTASI, LLP
                                            Riverfront Office Park
                                            One Main Street, 11th Floor
                                            Cambridge, MA  02142
                                            Telephone:  (617) 395-7000
                                            Facsimile:  (617) 395-7070
                                            Email: emailservice@lalaw.com

                                            Paul R. Mordarski (BBO #561803)
                                            MORRISSEY, HAWKINS & LYNCH
                                            One International Place, Suite 3220
                                            Boston, MA 02110
                                            Telephone: (617) 748-5410
                                            Email: pmordarski@mhlaw.com


## CERTIFICATE OF SERVICE

I certify that on October 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants.


                                             /s/ Thomas P. McNulty
                                            Thomas P. McNulty